UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                           EASTERN DIVISION

TIMOTHY WALLACE,                )
                                )
            Movant,              )
                                )
      vs.                        )         No. 4:04-CV-1024 (CEJ)
                                )
UNITED STATES OF AMERICA,        )
                                )
            Respondent.          )

                        **MEMORANDUM AND ORDER**

       This matter is before the Court upon the motion of Timothy Wallace to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. The United States has filed a response, and the issues are fully briefed.

       On August 7, 2002, an indictment was filed charging Wallace with one count of knowingly and intentionally possessing pseudoephedrine, knowing or having reasonable cause to believe it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2). On October 23, 2002, a jury found Wallace guilty. Wallace appeared for a sentencing hearing on January 31, 2003. The range of punishment under the United States Sentencing Guidelines was 210 to 262 months, based upon a total offense level of 32 and a criminal history category of VI. However, because the statutory maximum for the offense was twenty years, the guideline range of imprisonment became 210 to 240 months. The Court sentenced defendant to a 240-month term of imprisonment, followed by a three-year term of supervised release. Wallace appealed his conviction and sentence to the Court of Appeals for the Eighth Circuit. The judgment was affirmed. United

States v. Wallace, 75 Fed. Appx. 555 (8th Cir. 2003). Wallace timely filed the instant § 2255 motion on August 9, 2004.

I. **Background**

On July 15, 2002, acting on telephone calls from a confidential informant,[1] Detective Phillip Menendez and Officer Daniel Earley pulled over a vehicle in the vicinity of 4023 Page Avenue in the City of St. Louis. Officer Earley spoke with the driver, who produced false identification in the name of Keith Liston; he was actually Scott Wallace, movant's brother. Detective Menendez approached the passenger, Shirley Archie. He observed blister packs of what appeared to be pseudoephedrine near Archie in the passenger seat and asked her to step from the car. Menendez testified that Archie claimed that the pills did not belong to her.

Scott Wallace and Archie were placed in the rear of a patrol car and were removed from the immediate vicinity. Detectives Menendez and James Kenney and Officers Earley and Jim Joyner went to the residence at 4023 Page Avenue. Kenney knocked on the front door. Menendez testified that Rebecca Davis answered the door and gave oral consent to search the residence. In the front room were Glenn Ruff, Chelise Wallace, and movant Wallace. Chelise Wallace and movant were sitting on a couch immediately to the right of the door. Chelise Wallace, Menendez, and Earley all testified that

---

[1]The informant called Menendez twice. In the first call, the informant stated that "Tim" and "Shirley" would be driving to the house at 4023 Page Avenue and would have pseudoephedrine in their possession. The informant gave Menendez a description of the vehicle. Several hours later, the informant called again and stated that the transaction was underway.

-2-

Wallace jumped up and ran toward the back of the house when the officers entered the room. Kenney and Menendez gave chase and apprehended Wallace in the kitchen. Menendez testified that Wallace held a clear plastic bag containing pseudoephedrine pills. Chelise Wallace testified that she saw police officers take two additional bags from under the couch but denied knowing what the bags contained. Menendez testified that the bags contained several more pseudoephedrine pills.

Archie testified at trial that she lived in the residence at 4023 Page Avenue, which she described as a place where people gathered to use drugs. Movant Wallace was a frequent visitor there. He paid Archie to obtain pseudoephedrine pills for him, giving her $100 for every thousand pills she provided. Archie testified that she and Scott Wallace went together on July 15th to steal pills. She returned to 4023 Page Avenue with 2,000 pills which she gave to movant Wallace. Archie and Scott Wallace had just left the residence to buy cocaine when they were pulled over by the police. Archie insisted that Menendez did not participate in pulling over the car or in her arrest. She also denied that there was any pseudoephedrine in the car.

Wallace was initially charged with three counts of possession of a controlled substance in violation of state law. Federal authorities arrested him on July 16, 2002, and on August 7, 2002, a federal grand jury returned an indictment charging Wallace with one count of possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(2).

## II. Discussion

In his motion, Wallace asserts three grounds for relief: (1) prosecutorial misconduct;[2] (2) denial of effective assistance of counsel; and (3) that his sentence was imposed in violation of Blakely v. Washington, 542 U.S. 296 (2004).

### A. Prosecutorial Misconduct

Wallace alleges, first, that the government attorney knowingly suborned false testimony from Detective Menendez before the grand jury and at trial. He further alleges that the government withheld evidence of perjury in violation of Brady v. Maryland, 373 U.S. 83 (1963).

#### 1. False Testimony

Wallace contends that Menendez falsely testified before the grand jury that the police officers obtained written consent to search before entering the residence at 4023 Page Avenue. Absent Menendez's perjured testimony, Wallace contends, he would not have been indicted.

The following exchange occurred during the appearance of Detective Menendez before the grand jury:

> A: [W]e went and conducted a consent to search which is a form where you go up to the people of the house and ask if they want to cooperate and let you inside of the house instead of having a search warrant. They signed it and then we were able to gain entry into the house.

---

[2]Wallace's prosecutorial misconduct claims were not raised on appeal. The government, however, does not contend that the argument is procedurally defaulted and so the Court will address the claim on the merits. See United States v. Mooring, 287 F.3d 725, 727 (8th Cir. 2002) (court need not determine whether cause and prejudice excuse procedural default where government failed to assert default).

-4-

> Q: So you had a signed consent to search and did you, in fact, enter the house?
>
> A: Yes, we did.

At trial, Menendez testified that the officers received verbal consent to search from Rebecca Davis. The written consent was obtained at a later time, "when everyone in the house was secure."

Wallace's grand jury claim cannot succeed. A petit jury's guilty verdict renders errors during the grand jury proceedings harmless. United States v. Sanders, 341 F.3d 809 (8th Cir. 2003). A guilty verdict means that Wallace was guilty beyond reasonable doubt. Id. (internal quotation omitted). "Except in cases involving racial discrimination in the composition of the grand jury, a guilty verdict by the petit jury excuses errors at the grand jury level that are 'connected with the charging decision.'" United States v. Hintzman, 806 F.2d 840, 843 (8th Cir. 1986), quoting United States v. Mechanik, 475 U.S. 66 (1986).

Wallace also contends that Detective Menendez gave false testimony at trial when he testified that he was present at the house when Wallace was arrested. In his misconduct claim, he appears to argue that, because Sylvia Archie contradicted Menendez's assertion that he participated in her arrest, the prosecutor should have known that Menendez was lying when he testified that he participated in Wallace's arrest at 4023 Page Avenue.

To prove prosecutorial use of false testimony, Wallace must show that: (1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there

is a "reasonable likelihood" that the perjured testimony could have affected the jury's judgment. United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995); United States v. Nelson, 970 F.2d 439, 443 (8th Cir. 1992). "Mere inconsistency" between witnesses' testimony is not necessarily perjury, and not every contradiction is material. Id. "[A] challenge to evidence through another witness or prior inconsistent statements [is] insufficient to establish prosecutorial use of false testimony." United States v. White, 724 F.2d 714, 717 (8th Cir. 1984).

Wallace's allegations establish, merely, an inconsistency between the testimony of Menendez and Archie. No evidence supports Wallace's claim that Menendez was not present at 4023 Page Avenue during Wallace's arrest. Officer Earley corroborated Menendez's testimony, and Chelise Wallace, the only other eyewitness who testified, did not testify about the identity of any of the officers.[3] Archie's testimony that Menendez did not participate in the vehicle stop, even if credited by the jury, would cast doubt on Menendez's credibility but is ultimately immaterial to Wallace's assertion that Menendez was not present at his arrest. Wallace has not supported his contention that Menendez lied and his claim that the prosecutor solicited perjured testimony fails.

### 2. *Brady* Violation

Wallace contends that the prosecution withheld favorable evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

---

[3]As discussed below, Wallace contends that dispatch records and radio transcripts would have proved that Menendez was elsewhere. Defense counsel did not have the same view of that evidence.

Specifically, Wallace asserts that the prosecution should have provided dispatch records and transcripts of radio transmissions that would have shown that Menendez was not present during his arrest.

In Brady, the Supreme Court held that due process requires the government to disclose material, exculpatory evidence to the defendant. Morales v. Ault, 476 F.3d 545, 554 (8th Cir. 2007). "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Id., quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Prejudice cannot be shown "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Id. In determining whether confidence in the verdict has been undermined, the courts consider the items of suppressed evidence collectively, rather than individually. Id., quoting Liggins v. Burger, 422 F.3d 642, 651-52 (8th Cir. 2005).

Wallace cannot establish a Brady violation because there is no evidence that the material was withheld from the defense. The government submits the affidavit of defense counsel Kevin Curran, who states that he investigated the records relating to Detective Menendez's whereabouts and reviewed a radio tape allegedly made by Detective Menendez on the day of Mr. Wallace's arrest. It was Mr. Curran's opinion that these materials did not contradict Detective Menendez's testimony and hence he did not introduce the evidence.

Wallace cannot hold the prosecution responsible for failing to introduce evidence that was available to the defense that the defense declined to rely on. Wallace's Brady claim fails.

### B. Ineffective Assistance of Counsel

Wallace asserts that he received constitutionally ineffective assistance of counsel at the pretrial, trial, and sentencing stages of the proceedings against him.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to show prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The failure to show prejudice is dispositive and courts need not address the reasonableness of counsel's performance in the absence of prejudice. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

#### 1. Pretrial Proceedings

Wallace contends that defense counsel should have called witnesses to testify at the suppression hearing that Ms. Davis did not give consent to search the apartment at 4023 Page Avenue. Detective Menendez was the sole witness at the suppression hearing.

A defendant has standing to challenge the admission of illegally obtained evidence only if his or her own constitutional rights were violated. Rakas v. Illinois, 439 U.S. 128, 134-35 (1978) ("It is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protections.") The Supreme Court has held that guests present in an apartment for the purpose of completing drug transactions have no legitimate expectation of privacy in the apartment and, thus, no standing to challenge the legitimacy of a search of that apartment. Minnesota v. Carter, 525 U.S. 83, 91 (1998). Shirley Archie, who resided at 4023 Page Avenue, testified that Wallace was merely a guest in the apartment. Indeed, Wallace himself does not contend that he had an expectation of privacy in the premises. Thus, Wallace had no standing to challenge the circumstances of the search. Wallace was not prejudiced by counsel's decisions with respect to the suppression hearing.

### 2. Trial

Wallace asserts that he received ineffective assistance of counsel at trial because defense counsel refused to call witnesses or present evidence that would have established that Detective Menendez was lying when he testified that he was present at 4023 Page Avenue during the search and arrest.

In his affidavit, defense counsel Curran asserts that he investigated Wallace's claim that Detective Menendez was not present at 4023 Page Avenue at the time of the arrest and concluded that there was no evidence to support that claim. Mr. Curran also

interviewed Glenn Ruff, who would have testified that Wallace was present to purchase pseudoephedrine to process into methamphetamine, evidence which would have been advers to Wallace. Counsel and his investigator were unable to locate Scott Wallace or Rebecca Davis (whom Wallace believed to be the confidential informant), and Detective Kenney refused to speak to them. Mr. Curran states that he considered obtaining a subpoena to compel Kenney's attendance at trial but he had no basis to believe that Kenney would offer testimony favorable to the defense. Mr. Curran also informed Wallace that, absent clear evidence, juries are reluctant to conclude that a police officer is lying.

Under Strickland, there is a strong presumption that an attorney's performance is professionally reasonable. Bowman v. Gammon, 85 F.3d 1339, 1345 (8th Cir. 1996). Decisions related to trial strategy made after thorough investigation of law and facts are virtually unchallengeable. Strickland, 466 U.S. at 690. See also United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (decision not to call witnesses is a "virtually unchallengeable decision of trial strategy")(internal quotations omitted). In this instance, defense counsel investigated his client's claims and made reasonable strategic decisions. Wallace's Strickland claim based on trial strategy fails.

Wallace also contends that counsel was constitutionally ineffective in failing to present an opening statement. The transcript reflects that, contrary to Wallace's assertion, defense counsel did make an opening statement.

### 3. Sentencing

Wallace first contends that counsel was ineffective during sentencing proceedings for failing to challenge the quantity of pseudoephedrine attributed to him. Based on the evidence presented at trial, the Court found that Wallace possessed at least 100 grams but less than 300 grams, resulting in a base offense level of 32. U.S.S.G. § 2D1.11(d)(4) (2002). Wallace had just over 40 grams on his person; the Court also attributed to him the pseudoephedrine pills found under the couch at 4023 Page Avenue. Wallace contends that counsel should have challenged this additional quantity. A review of the record establishes that defense counsel made this objection both in writing and orally at the sentencing hearing, so this claim has no basis in fact.

Wallace claims that the Court erroneously classified him as a career offender by relying upon a simple possession offense. As the government notes, Wallace did not raise this claim on direct appeal and thus he is precluded from raising the claim in a § 2255 motion. Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (challenge to career offender status is an ordinary question of guideline interpretation that is not cognizable under § 2255).

Wallace also asserts that counsel should have objected to the use of a 1985 drug possession conviction as a predicate for the career offender enhancement. According to the presentence report, Wallace's criminal convictions resulted in the assessment of fifteen criminal history points. Because he was on parole at the time of the offense, two points were added pursuant to U.S.S.G. §

4A1.1(d).  Thus, his total criminal history points was seventeen, placing him in Criminal History Category VI.

An adult defendant convicted of a controlled substance offense is a career offender if he has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).  A career offender's Criminal History Category is always VI.  Wallace's prior offenses included a conviction in 1983 for second-degree assault, a conviction in 1986 for burglary of a building, a conviction in 1987 for burglary of a building, a conviction in 1992 for third-degree assault, a 1992 conviction for leaving the scene of an accident, a 1994 conviction for second-degree property damage, and a 1995 conviction for possession of marijuana.  Wallace qualified for the career offender designation on the basis of the two burglary convictions which, by definition were crimes of violence.  U.S.S.G. § 4B1.2(a). Thus, the 1985 conviction was of no consequence.  Moreover, as discussed above, Wallace was in Criminal History Category VI based on the number of criminal points assessed without regard to the career offender guideline.

Wallace contends in his reply brief that the government failed to comply with the notice procedure required by 21 U.S.C. § 851 and thus is precluded from relying upon the burglary convictions to classify him as a career offender.  This claim fails for several reasons.  First, this claim should have been raised on appeal and is not cognizable under § 2255.  Furthermore, § 851(a)(1) is limited to situations in which a the statutory minimum or maximum penalty for an offense is enhanced.  United States v. Auman, 920

F.2d 495, 497-98 (8th Cir. 1990). Here, the guidelines provided for a range of imprisonment of 210-262 months; the range was <u>reduced</u> to 240 months to reflect the statutory maximum. Thus, § 851 does not apply. Finally, to the extent that Wallace presents a <u>Strickland</u> claim based upon counsel's failure to challenge the use of the burglary convictions to classify him as a career offender, he cannot show prejudice: the drug quantity attributed to Wallace resulted in a base offense level of 32, regardless of the career offender designation.

Wallace complains that counsel failed to object to an increase of his base offense level based upon the presence of multiple chemicals. The record shows that the sentence imposed was based on Wallace's possession of pseudoephedrine, not of any other chemicals.

### 4. **Defective Indictment**

Wallace contends that counsel should have objected to the fact that the indictment was not signed. Wallace is incorrect – the foreperson of the grand jury signed the indictment.

### C. *Blakely* and *Booker* **Claim**

Wallace asserts that his sentence was illegal in that it was based on drug quantities not charged in the indictment or found by the jury. The rules announced in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543 U.S. 220 (2005), do not apply retroactively on collateral review. <u>United States v. Hernandez</u>, 436 F.3d 851, 855 (8th Cir. 2006); <u>Never Misses A Shot v. United States</u>, 413 F.3d 781, 783 (8th Cir. 2005). Neither

ruling affects convictions that were final before the cases were decided. Here, Wallace's conviction was final in 2003, before Blakely and Booker were decided. Thus, he is not entitled to relief on this claim.

   III. **Conclusion**

For the foregoing reasons, the Court concludes that Wallace is not entitled to the relief he seeks. The Court finds that Wallace has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2). Accordingly,

**IT IS HEREBY ORDERED** that the motion of Timothy Wallace to vacate, set aside, or correct sentence [Doc. #1] is **denied**.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 9th day of July, 2007.